IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

EAGLE PAPER INTERNATIONAL, INC.,
and JACOB GERON,

               Plaintiffs,

                                   CIVIL ACTION NO. 2:23-cv-____

v.                                       Jury Trial Demanded

CONTINENTAL PAPER GRADING COMPANY,
Serve:  Howard M Berrington,
        Registered Agent
     161 N. Clark Street, Suite 4200
     Chicago, Illinois 60601

and

WILLIAM D. HARROW,
Serve:  3500 Galt Ocean Drive, Apt. 1517
     Fort Lauderdale, Florida 33308

               Defendants.

## **COMPLAINT**

NOW COME Plaintiffs Eagle Paper International, Inc. and Jacob Geron, by counsel, and as their Complaint against Defendants Continental Paper Grading Company and William D. Harrow state as follows:

### **Introduction**

1.      Jacob Geron ("Mr. Geron") is the founder and principal of Plaintiff Eagle Paper International, Inc. ("Eagle") and two other companies (collectively, "Eagle Companies") in the business of importing and exporting paper. Defendant William D. Harrow ("Mr. Harrow") is the Chief Executive Officer of Defendant Continental Paper Grading Company ("CPG"). CPG's primary business is in the wastepaper market.

2.      In an effort to secure an interest in the import and export of paper (as opposed to wastepaper), Mr. Harrow approached Mr. Geron in 2008 with a proposal to acquire a 50% ownership interest in the Eagle Companies that would provide CPG with a partner through which to import and export paper, as well as a revenue stream from Eagle's import and export of paper. Critical to the arrangement was CPG's agreement that, upon acquiring half of Eagle, CPG would not import or export paper other than wastepaper.

3.      Eagle and CPG formalized the arrangement through two agreements—the Eagle Paper Entities Stockholders' Agreement ("Stockholders' Agreement," a copy of which is attached as **Exhibit 1**) and the Stock Purchase Agreement ("Purchase Agreement," a copy of which is attached as **Exhibit 2**), both executed in April 2009 (collectively, the "Agreements"). By virtue of the Agreements, Mr. Harrow became a director of Eagle and assumed its associated fiduciary duties.

4.      For several years, CPG and Eagle operated in compliance with the terms and conditions of the Agreements, with CPG reaping the benefits of access to the import-export paper business through its 50% ownership of Eagle, while Mr. Geron preserved his interest in Eagle through his remaining 50% ownership in the company.

5.      Since in or about 2019, CPG, at the specific direction of Mr. Harrow, began exporting paper in violation of the Agreements, and CPG has exported paper from time to time over the last four years in breach of the Agreements. As a result of CPG and Mr. Harrow's breaches of the Agreements through the diversion of the import-export paper business to CPG, Eagle directly and Mr. Geron through his 50% ownership of Eagle have suffered damages in an amount exceeding $4 million.

6.      Eagle and Mr. Geron seek the following relief as a result of CPG's breaches of the Agreements and Mr. Harrow's breach of his fiduciary duty to Eagle: (a) direct damages in the form of Eagle's lost profits since 2019; (b) consequential damages resulting from CPG's diverting this potential source of profit since 2019; (c) punitive damages stemming from Mr. Harrow's egregious conduct while a member of Eagle's board of directors; (d) disgorgement of the Defendants' unjust enrichment of the benefits flowing from the Agreements and the 50% sale of the Eagle companies to CPG; (e) a permanent injunction preventing CPG from participating in the import-export paper market; (f) a declaration that CPG is bound by the Agreements and can no longer participate in the import-export paper market; and (g) pre-judgment interest, costs, and attorney's fees.

### Parties

7.      Plaintiff Mr. Geron is a resident of Virginia Beach, Virginia. At all times relevant hereto, Mr. Geron has been president of Eagle and its related companies and is responsible for the business's day-to-day operation. He is a party to both the Stockholders' Agreement and the Purchase Agreement.

8.      Plaintiff Eagle is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. Eagle is in the business of importing and exporting paper. It is a party to both the Stockholders' Agreement and the Purchase Agreement.

9.      Defendant CPG is an Illinois corporation with its principal place of business in Hodgkins, Illinois. CPG is in the wastepaper business, buying and selling all grades of wastepaper, post-industrial and post-consumer plastics, recyclable metals, and other products in both the domestic and foreign market. It is a party to both the Stockholders' Agreement and the Purchase Agreement.

10.     Defendant Mr. Harrow is a Florida resident. At all times relevant hereto,

3

Mr. Harrow was Chief Executive Officer and majority stockholder of CPG, as well as a member of Eagle's board of directors.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse—Mr. Geron is a Virginia resident, Eagle's principal place of business is in Virginia, Mr. Harrow is a Florida resident, and CPG's principal place of business is in Illinois—and the amount in controversy exceeds $75,000.

12.     This Court has specific personal jurisdiction over the Defendants under Virginia's long-arm statute, Va. Code § 8.01-328.1, and the Due Process Clause of the United States Constitution because the causes of action alleged herein arise from the Defendants' transacting business in Virginia and communicating countless times by phone and email with the Plaintiffs in Virginia.

13.     Venue in the U.S. District Court for the Eastern District of Virginia's Norfolk Division is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims—Mr. Geron and Eagle's entering into the Agreements—took place in Virginia Beach, and a substantial part of the property that is the subject of the action—Eagle—is situated in this federal district.

14.     Personal jurisdiction and venue are further established in this Court because the Defendants contracted to litigate issues arising from the Agreements "in any state or federal court located in the Commonwealth of Virginia" (Purchase Agreement ¶ 15) and in accordance with Virginia law (Stockholders' Agreement ¶ 11(c)).

## Factual Background

15.     Mr. Geron founded Eagle in 1990, developing it into a successful international

paper-trading company with many domestic and overseas customers. Within a few years, Mr. Geron formed and led the Eagle Companies to facilitate Eagle's exporting enterprise. The focus of the Eagle Companies is on exporting paper.

16.     Prior to CPG's acquisition of an interest in Eagle, CPG was one of Eagle's paper suppliers. In 2008, for example, Eagle bought $4 million worth of paper from CPG. At that time CPG's export business was limited to wastepaper. To the extent that CPG exported any paper, it did so through its relationship with export companies, including Eagle.

17.     Recognizing the value in exporting paper, Mr. Harrow approached Mr. Geron in 2008 to explore the possibility of acquiring a 50% interest in the Eagle Companies, thereby affording CPG a steady revenue stream from the export of paper through Eagle. Mr. Harrow explained to Mr. Geron that CPG had been attempting to export paper directly for years, without success, concluding that the best way to participate in the import and export of paper was through acquisition of a company already successful in such business.

18.     Mr. Harrow further explained that, to protect Mr. Geron's interest, CPG would agree to limit its participation in the import-export market to its core business of wastepaper, taking part in the import and export of paper only through its ownership of Eagle, thereby preserving the value of Eagle for Mr. Geron, who would retain a 50% interest in the company.

19.     Mr. Geron accepted Mr. Harrow's offer. On April 1, 2009, the parties signed and executed each of the Agreements. Relevant to this litigation, the Agreements laid out the following terms:

    a.     CPG acquired half of the shares of Eagle and the related Eagle Companies;

    b.     Mr. Harrow joined Mr. Geron as a member of the board of directors for Eagle and the other Eagle Companies;

c. As part of the purchase price, CPG secured a $1.2 million standby letter of credit, which serves as collateral for Eagle's $4.9 million line of credit with Bank of America;

d. Also as part of the purchase price, CPG paid Mr. Geron $400,000; and

e. CPG and Mr. Harrow agreed that CPG's business activities could not include either the import or export of paper, with the exception of wastepaper.

20. CPG, Mr. Harrow, Eagle, and Mr. Geron all understood that the Agreements, as written, provided that all import and export activity involving paper would be conducted through Eagle and that CPG's imports and exports would be limited to wastepaper.

21. The first several years under the Agreements were beneficial to both parties, with Mr. Harrow calling the arrangement "a great marriage." Even to this day, CPG promotes its relationship with Eagle, stating on its website that CPG became an export agent after acquiring a 50% interest in Eagle and, as a result, "is now happily sourcing and selling multiple grades in the U.S. and around the world." CPG's website further notes that Eagle has expanded its sales into Europe, Africa, and the Far East while "sourcing from mills in Russia, Mexico, Israel, Turkey and Canada." *About Continental Paper Grading*, https://www.cpgco.com/about-waste-paper-buyers/ (last visited Oct. 18, 2023).

22. As early as 2019, however, CPG began bypassing Eagle and exporting paper in breach of the Agreements. The following are examples of CPG's many violations of the Agreements:

a. In 2013, CPG introduced a tissue mill, ST Tissue LLC ("ST Tissue"), to Eagle so that Eagle could purchase paper from ST Tissue for export. Eagle purchased paper from ST Tissue directly while CPG performed the billing for the transactions. But within

the past five years, Eagle and Mr. Geron discovered that CPG was buying paper from ST Tissue and exporting it to Mexico in violation of the Agreements. Eagle attempted to intercede and resume business with ST Tissue in 2021, citing the relevant provisions in the Agreements, but Mr. Harrow warned Mr. Geron to "back down" and explained, "Things have now changed."

b.      Eagle had previously sold paper, primarily C1S-grade and thermal paper supplied by CPG, directly to MLM India Limited ("MLM"), a customer based in India. During that time, Mr. Harrow was in a dispute with MLM's owner and refused to work with him. Mr. Geron helped reconcile the parties. Soon after, within the past five years, Mr. Geron and Eagle learned that CPG had begun selling and exporting paper directly to MLM in breach of the Agreements.

c.      More recently, Mr. Harrow and CPG hired Bob Slesarchik, who had been working at a U.S.-based paper company that sold kraft linerboard—thick paper primarily used in corrugated packaging boxes—to companies in Italy. Kraft linerboard also was the primary grade of paper CPG supplied to Eagle for export, selling at least 100,000 tons of it to Eagle, at least until CPG lost its paper source a few years ago. Mr. Slesarchik's previous company had been exporting 3,000 tons of kraft linerboard per month to Italian companies. CPG used Mr. Slesarchik to establish a customer base in Italy and began exporting paper directly to companies in that country in violation of the Agreements. CPG even opened an office in Italy to facilitate exporting paper there. What's more, CPG employs Mr. Slesarchik to develop non-wastepaper-exporting networks in other countries. Public records reveal some of CPG's recent efforts exporting kraft linerboard:

7

| Date | Weight of Paper | Destination |
|---|---|---|
| November 8, 2022 | 170 tons | Italy |
| November 17, 2022 | 246 tons | Morocco |
| November 18, 2022 | Roughly 300 tons | Italy |
| November 23, 2022 | 226 tons | Italy |
| November 24, 2022 | 224 tons | Morocco |
| December 2, 2022 | 118 tons | Morocco |
| December 8, 2022 | 94 tons | Italy |
| December 9, 2022 | 264 tons | Italy |
| December 13, 2022 | 315 tons | Italy |
| December 19, 2022 | 373 tons | Italy |
| December 20, 2022 | Roughly 150 tons | Italy |
| December 27, 2022 | 334 tons | Morocco |
| February 9, 2023 | 87 tons | Italy |
| February 9, 2023 | 59 tons | Sri Lanka |
| February 10, 2023 | 213 tons | Italy |
| February 10, 2023 | 59 tons | Sri Lanka |
| February 14, 2023 | 159 tons | Italy |
| February 16, 2023 | 521 tons | Italy |
| February 27–28, 2023 | At least 82 tons | Italy |
| March 1, 2023 | 98 tons | Italy |
| March 17, 2023 | 884 tons | Italy |
| March 18, 2023 | 98 tons | Italy |
| March 29, 2023 | 283 tons | Italy |

d.      As recently as June of this year, Mr. Harrow announced that CPG had been "awarded the Italian market to represent WestRock in Italy"; he hoped to "grow" the representation to include kraft linerboard with the goal of "trying to get more countries." *See* Email from William Harrow to Jacob Geron (June 21, 2023, 3:16 p.m. EST), attached as **Exhibit 3**.

e.      For more than ten years, Eagle has exported tissue, towel, and napkin paper rolls and finished paper products ("TTN"), as well as packaging paper grades, purchased from Georgia-Pacific LLC ("Georgia-Pacific"). In or about September 2018, CPG took over buying TTN from Georgia-Pacific. CPG would then supply it to Eagle for export. But Eagle and Mr. Geron have discovered that CPG recently began purchasing TTN from

Georgia-Pacific and exporting it to Mexico in violation of the Agreements.

23.     CPG and Mr. Harrow now freely and openly operate in violation of the Agreements by exporting paper. For example, on June 15, 2023, Mr. Harrow admitted to Mr. Geron in an email that "[w]e are selling a lot thru our new HK [Hong Kong] office." Email from William Harrow to Jacob Geron (June 15, 2023, 9:07 a.m. EST), attached as **Exhibit 4**.

24.     By way of another example, in June 2023, Mr. Harrow was considering whether to purchase 1,000 tons of recycled kraft paper produced by Nine Dragons Paper (Holdings) Limited, a large Chinese paper company that had entered the U.S. paper market through ND Paper LLC ("ND Paper"). He offered to sell what he purchased to Mr. Geron and Eagle. Mr. Geron expressed interest in purchasing the paper and asked some questions about its quality. Mr. Harrow responded by explaining that CPG would purchase a few loads of the product from ND Paper and run them through local converters to ensure that they were as the company advertised. Mr. Harrow assured Mr. Geron that he would let Mr. Geron "know how that goes." Email from William Harrow to Jacob Geron (June 30, 2023, 7:19 a.m. EST), attached as **Exhibit 5**.

25.     Mr. Geron did not hear back from Mr. Harrow about this offer until August 2023, when Mr. Harrow revealed that, after testing ND Paper's product and confirming its quality, he had sold most of it to customers in China. He then offered "some" of the remainder to Mr. Geron and Eagle, but warned that "this could be gone in a couple weeks." Emails from William Harrow to Jacob Geron (August 29, 2023, 7:25 a.m. & 8:28 a.m. EST), attached as **Exhibit 6**.

26.     On information and belief, CPG has diverted no less than $4 million from Eagle and now is participating in the import-export paper market without Eagle, all in breach of the Agreements. That amount increases each time CPG breaches the Agreements, and those losses flow from breaches of which Eagle and Mr. Geron are aware. Meanwhile, the loss of this income

has forced Eagle to cut salaries, reduce its number of employees, and limit its marketing activities.

27.     Eagle and Mr. Geron demand trial by jury on any issue so triable.

## Count I
## Breach of Contract as to CPG

28.     Eagle and Mr. Geron incorporate the allegations in paragraphs 1 through 27 as if alleged fully herein.

29.     The Stockholders' Agreement and Purchase Agreement are binding contracts by and between Mr. Geron and Eagle on one side, and CPG on the other.

30.     CPG has breached the Agreements for the reasons set forth above.

31.     As a result of CPG's many breaches, Mr. Geron and Eagle have suffered and will suffer damages, including direct, indirect, consequential, and incidental damages in an amount to be determined at trial, but on information and belief exceeding $4 million.

## Count II
## Breach of Fiduciary Duty as to Mr. Harrow

32.     Eagle and Mr. Geron incorporate the allegations in paragraphs 1 through 31 as if alleged fully herein.

33.     As a member of Eagle's board of directors, Mr. Harrow owes the company a duty to act in good faith and with due regard for Eagle's rights and interests, and in the best interest of Eagle.

34.     Mr. Harrow breached his fiduciary duty by having CPG compete directly with Eagle in the import-export paper market, diverting business and profits from Eagle, and violating the terms of the Agreements.

35.     Mr. Harrow's actions and omissions constitute a breach of fiduciary duty that harmed Eagle directly and Mr. Geron as a party to the Stockholders' Agreement and as a 50%

owner of Eagle.

36.     As a direct result of Mr. Harrow's breach of fiduciary duty, Eagle (directly) and

Mr. Geron (as a 50% owner of Eagle) suffered and will suffer damages, including direct, indirect,

consequential, and incidental damages in an amount to be determined at trial, but on information

and belief exceeding $4 million.

37.     What's more, Mr. Harrow's egregious, intentional conduct while serving on

Eagle's board of directors makes him liable for punitive damages arising from this breach.

## Count III
## Unjust Enrichment

38.     Eagle and Mr. Geron incorporate the allegations in paragraphs 1 through 37 as if

alleged fully herein.

39.     Eagle and Mr. Geron conferred a benefit to the Defendants by selling 50% of the

Eagle companies to CPG and putting Mr. Harrow on Eagle's board of directors. Thanks to that

arrangement, CPG tapped into the import-export paper market and secured an additional revenue

stream.

40.     The Defendants were aware of the Agreements and their obligation not to compete

with Eagle in the import-export paper market.

41.     The Defendants accepted and retained the benefit of the Agreements and the 50%

sale of the Eagle companies to CPG, but now compete with Eagle in the import-export paper

market directly and through CPG's brokers in breach of the Agreements.

42.     It would be unjust to permit the Defendants to retain the Agreements' benefits under

these circumstances.

43.     Eagle and Mr. Geron thus seek a judgment against the Defendants for a quantum

meruit recovery of the amount by which the Defendants have been unlawfully enriched—a total of at least $4 million, plus pre- and post-judgment interest.

## Count IV
## Declaratory Judgment and Permanent Injunction

44.     Eagle and Mr. Geron incorporate the allegations in paragraphs 1 through 43 as if alleged fully herein.

45.     An actual controversy within the subject matter jurisdiction of this Court exists between the Plaintiffs and Defendants as to whether CPG is in breach of the Agreements by exporting paper in direct conflict with Eagle. Under 28 U.S.C. § 2201, this Court can issue a judgment declaring the parties' respective rights and obligations with respect to the terms of the agreements

46.     The Court should issue a declaratory judgment confirming Eagle's right to exclusive participation in the import-export paper market and barring Mr. Harrow and CPG from importing or exporting paper directly or indirectly through CPG's brokers. The Court should also enter a permanent injunction enforcing the declaratory judgment and requiring Mr. Harrow and CPG to immediately cease CPG's import and export operations.

47.     Eagle and Mr. Geron are entitled to injunctive relief as there is no adequate remedy at law in that CPG's multiple, repeated violations of the Agreements would result in seriatim lawsuits and the accompanying legal fees and expenses for Eagle and Mr. Geron to secure the benefits afforded by the Agreements.

## Prayer for Relief

WHEREFORE, Eagle and Mr. Geron respectfully pray that this Court:

1.     Enter judgment in Eagle's and Mr. Geron's favor and against Mr. Harrow and CPG

on all counts set forth in this Complaint;

2.      Award Eagle and Mr. Geron $4 million in direct, indirect, consequential, and incidental damages incurred within the last five years or an amount to be determined at trial;

3.      Award Eagle and Mr. Geron punitive damages stemming from Mr. Harrow's egregious breach of his fiduciary duty to Eagle;

4.      Award Eagle and Mr. Geron the disgorgement of the Defendants' unjust enrichment;

5.      Declare the parties' rights and obligations under the Stockholders' Agreement and the Purchase Agreement;

6.      Permanently enjoin Mr. Harrow and CPG from importing or exporting paper, except wastepaper, directly or through CPG's brokers;

7.      As to CPG, award Eagle and Mr. Geron costs, pre-judgment interest, and attorney's fees; and

8.      Award such other relief as this Court deems appropriate against the Defendants.

Dated: October 18, 2023                    Respectfully submitted,

                                           EAGLE PAPER INTERNATIONAL, INC.
                                           and JACOB GERON

                                           By:      /s/   Gary A. Bryant
                                                    Gary A. Bryant (VSB No. 27558)
                                                    William B. Jackson (VSB No. 84012)
                                                    Bethany J. Fogerty (VSB No. 94753)
                                                    Willcox & Savage, P.C.
                                                    440 Monticello Ave., Suite 2200
                                                    Norfolk, Virginia 23510
                                                    (757) 628-5500 Telephone
                                                    (757) 628-5566 Facsimile
                                                    gbryant@wilsav.com
                                                    wjackson@wilsav.com
                                                    bfogerty@wilsav.com