UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**EAGLE PAPER INTERNATIONAL, INC.,**

**and**

**JACOB GERON,**

       **Plaintiffs and Counter Defendants,**

      **v.**                  **CIVIL NO.: 2:23cv512**

**CONTINENTAL PAPER GRADING COMPANY,**

       **Defendant and Counter Claimant,**

**and**

**WILLIAM D. HARROW,**

       **Defendant.**

### <u>MEMORANDUM ORDER</u>

This matter comes before the court on three (3) motions filed on November 29, 2023: (1) Defendant William D. Harrow's Motion to Dismiss, ECF No. 14 ("Harrow's Motion to Dismiss"); (2) Defendant Continental Paper Grading Company's ("CPG") Motion to Dismiss, ECF No. 16 ("CPG's Motion to Dismiss"); and (3) Defendants' joint Motion to Strike Plaintiffs' Jury Demand, ECF No. 18 ("Motion to Strike"). Defendants requested a hearing on all three motions. ECF No. 29. For the reasons herein, the court **GRANTS** in part and **DENIES** in part Harrow's Motion to Dismiss, **DENIES** CPG's Motion to Dismiss, and **GRANTS** the Motion to Strike. Defendants' request for a hearing is **DENIED**, as a hearing is unnecessary to resolve the motions.

## I. Procedural History

Plaintiffs filed a Complaint on October 18, 2023, naming CPG and William D. Harrow as Defendants. ECF No. 1. The Complaint alleges one count of breach of contract against CPG (Count I), one count of breach of fiduciary duty against Harrow (Count II), one count of unjust enrichment against both Defendants (Count III), and one count of declaratory judgment and permanent injunction against both Defendants (Count IV). Id. at 10-12. The Complaint also demands a trial by jury on "any issue so triable." Id. at ¶ 27.

On November 29, 2023, Defendant Harrow filed a Motion to Dismiss and Memorandum in Support, asserting that Counts II, III, and IV of the Complaint fail to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).[1] ECF Nos. 14 (Motion), 15 (Memorandum). Plaintiffs filed a Memorandum in Opposition to Harrow's Motion to Dismiss on December 13, 2023, ECF No. 23, to which Harrow replied on December 19, 2023, ECF No. 27.

---

[1] Also on November 29, 2023, Defendant Harrow filed an Answer to the Complaint and Defendant CPG filed an Answer and Counterclaim against Eagle and Geron. ECF Nos. 20 (Harrow Answer), 21 (CPG Answer and Counterclaim). Counter Defendants Eagle and Geron filed an Answer to the Counterclaim on December 20, 2023. ECF No. 28. Harrow's and CPG's Answers to the Complaint, CPG's Counterclaim, and the Counter Defendants' Answer to the Counterclaim are not before the court at this time.

Defendant CPG also filed a Rule 12(b)(6) Motion and Memorandum in Support on November 29, 2023. ECF Nos. 16 (Motion), 17 (Memorandum). CPG challenges Counts I, III, and IV. ECF No. 17 at 1. Plaintiffs opposed CPG's Motion to Dismiss in a Memorandum filed on December 13, 2023. ECF No. 24. CPG filed a Reply on December 19, 2023. ECF No. 26.

Both Defendants filed a Motion to Strike Plaintiff's Jury Demand and a Memorandum in Support on November 29, 2023. ECF Nos. 18 (Motion), 19 (Memorandum). Plaintiffs filed a Memorandum in Opposition to the Motion to Strike on December 13, 2023. ECF No. 22. Defendants filed their Reply on December 19, 2023. ECF No. 25. Finally, on December 21, 2023, both Defendants requested a hearing on all three Motions. ECF No. 29.

The court concludes that a hearing is unnecessary as the parties' submissions adequately present the issues and additional argument would not aid the decisional process. See Fed. R. Civ. P. 78; Local Civ. R. 7(J). Accordingly, having been fully briefed, the Motions are now ripe for determination.

## II. Factual Background

The court draws the following facts from the Complaint, which it accepts as true and views in the light most favorable to the non-moving party for the purposes of ruling on the instant motions to dismiss. E.g., Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, 684 F.3d 462, 467 (4th Cir.

3

2012). Mr. Geron, a Virginia resident, is the founder and principal of Eagle Paper International, Inc. ("Eagle"), a Virginia corporation, and two other companies (collectively, "Eagle Companies"), all three of which import and export paper. ECF No. 1 at ¶¶ 1, 7-8 (Complaint). Mr. Harrow, a Florida resident, is the Chief Executive Officer of CPG, an Illinois-based corporation that primarily deals in wastepaper, a different product than "paper."[2] Id. at ¶¶ 1-2, 9-10. CPG was one of Eagle's paper suppliers. Id. at ¶ 16. In 2008, Harrow approached Geron about CPG acquiring a fifty percent (50%) ownership interest in the Eagle Companies. Id. at ¶ 2. In April of 2009, the parties executed two Agreements ("the Agreements") by which CPG purchased a fifty percent (50%) ownership interest in the Eagle Companies and Harrow became a member of Eagle's board of directors, assuming the role's associated fiduciary duties. Id. at ¶ 3; see ECF Nos. 1-1 ("Stockholders' Agreement"), 1-2 ("Purchase Agreement"). The Agreements are attached to the Complaint as exhibits.

Both Agreements contain a restrictive covenant barring CPG from importing or exporting paper, except for wastepaper. ECF No. 1 at ¶ 19(e); see ECF No. 1-1 at § (7)(b)(ii)(A)

---

[2] Because "paper" is a different product than "wastepaper," ECF No. 1 at ¶ 2, the terms "paper" and "wastepaper" are mutually exclusive as used in this Memorandum Order.

(prohibiting CPG from "engag[ing] in any business activity other than CPG's Permitted Activities"); <u>id.</u> at § 7(a)(xiv)(E) (defining "CPG's Permitted Activities" to exclude "any business activity in connection with the paper industry" outside the United States, except for exporting and importing wastepaper); ECF No. 1-2 at ¶¶ 4.9.1, 4.2.5 (same).[3] The Purchase Agreement also contains a "Jury Waiver" clause in which "BUYER [CPG], THE COMPANY [Eagle], AND THE DISC [one of the other "Eagle Companies"] HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY." ECF No. 1-2 at ¶ 18; <u>see</u> <u>id.</u> at 2 (identifying which parties are "Buyer," "the Company," and "the DISC").

Starting in 2019, Harrow directed CPG to export paper to multiple international companies, including some of Eagle's business partners, in violation of the restrictive covenant barring CPG's participation in the import-export paper market. ECF No. 1 at ¶¶ 22-25. CPG now participates in the import-export paper market without Eagle. <u>Id.</u> at ¶ 26.

### III. Motions to Dismiss

#### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[3] The parties agree that this restrictive covenant appears in materially identical form in both Agreements. <u>See</u> ECF Nos. 17 at 4, 24 at 4 n.1.

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Ultimately, the complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). If a plaintiff's allegations fail to state a claim upon which relief can be granted, the complaint must be dismissed. See Fed. R. Civ. P. 12(b)(6).

### B. Analysis

Defendants CPG and Harrow challenge each of the Complaint's four (4) counts: (1) breach of contract as to CPG, (2) breach of fiduciary duty as to Harrow, (3) unjust enrichment as to both Defendants, and (4) declaratory judgment and permanent injunction as to both Defendants. ECF Nos. 15 at 1, 17 at 1.

Starting with the fourth count first, Plaintiffs seek a declaratory judgment confirming Eagle's exclusive right to participate in the import-export paper market and barring CPG and Harrow from participating in that market, plus a permanent injunction enforcing that judgment. ECF No. 1 at ¶ 46. At this

juncture, dismissing Plaintiffs' request for a declaratory judgment and permanent injunction is premature, until this case is concluded through dispositive motions or a judgment on the merits.[4] As for Plaintiffs' other three (3) counts, the court addresses each in turn.

### 1. Breach of Contract Against Defendant CPG

Plaintiffs allege that Defendant CPG breached its Agreements with Plaintiffs when CPG participated in the import-export paper market despite a restrictive covenant in the Agreements barring CPG from doing so. ECF No. 1 at ¶¶ 26, 30. Defendant CPG argues the breach of contract claim must be dismissed because the restrictive covenant that CPG allegedly violated is overbroad and unenforceable. ECF No. 17 at 3-5. Plaintiffs respond that CPG's challenge to the restrictive covenant's enforceability in a motion to dismiss is premature under Virginia law.[5] ECF No. 24 at 6.

---

[4] As explained below, the parties disagree on whether the restrictive covenant about imports and exports is enforceable, and that disagreement will not be resolved until after this Memorandum Order is issued. See infra Part III.B.1. Accordingly, it would be premature to dismiss Plaintiffs' request for a declaratory judgment and an injunction while the "status of the contract is unclear." Cloverleaf Enters., Inc. v. Md. Thoroughbred, Horsemen's Assoc., Inc., 730 F. Supp. 2d 451, 469 (D. Md. 2010); see Charter Oak Fire Ins. Co. v. Am. Cap., Ltd., No. 09-cv-0100, 2011 WL 856374, at *17-18 (D. Md. Mar. 9, 2011) (declining to dismiss declaratory judgment claim related to a contract because it was unclear whether the contract was void).

[5] The parties agree that Virginia law governs this dispute.

When one party challenges a restrictive covenant as overbroad and unenforceable, the party seeking to enforce the covenant bears the burden of showing that the restriction is justified. Lumber Liquidators, Inc. v. Cabinets To Go, LLC, 415 F. Supp. 3d 703, 715 (E.D. Va. 2019) (Lauck, J.) (citing Therapy Servs., Inc. v. Crystal City Nursing Ctr., Inc., 239 Va. 385, 389 S.E.2d 710, 711 (1990)). Therefore, a problem arises when the party seeking to enforce the covenant faces a motion to dismiss without first having an opportunity to present evidence that the covenant is justified. Id. at 716-17.

The Supreme Court of Virginia addressed this problem in Assurance Data, Inc. v. Malyevac, 286 Va. 137, 747 S.E.2d 804 (2013). In that case, an employer sued its former employee for allegedly breaching a restrictive covenant in the parties' employment contract. 747 S.E.2d at 806. The defendant employee filed a demurrer, the state-law equivalent of a Rule 12(b)(6) motion,[6] and the trial court sustained it, finding that the employer failed to state a claim because the restrictive covenant was overbroad and unenforceable. Id. at 806-07. The Supreme Court of Virginia reversed that decision because a demurrer "cannot be used to decide on the merits whether a

---

See ECF Nos. 1 at ¶ 14, 17 at 3 n.3.

[6] See Morgan v. Wal-Mart Stores E., LP, No. 3:10cv669, 2010 WL 4394096, at *2 (E.D. Va. Nov. 1, 2010) (Hudson, J.).

restraint on competition is enforceable." Id. at 805. Resolving the enforceability issue at the demurrer stage was in error because the plaintiff had no opportunity to "present evidence to demonstrate that the restraints" were justified. Id. at 809. Because "restraints on competition are neither enforceable nor unenforceable in a factual vacuum," the restraint's proponent "may prove a seemingly overbroad restraint to be reasonable under the particular circumstances of the case." Id. at 808. In Lumber Liquidators, a court in this District applied this reasoning to a challenge to a restrictive covenant's enforceability in a motion to dismiss. 415 F. Supp. 3d at 715-17. As that court explained, "the party seeking to enforce the restrictive covenant . . . must be afforded the opportunity to present evidence" that the restrictive covenant was valid. Id. at 717. As a result, the court denied the motion to dismiss because the motion's enforceability argument "require[d] the premature resolution of undeveloped questions of fact." Id.

However, CPG argues the court can reach the merits of the enforceability issue because in Lumber Liquidators, the court found that, "even if Assurance Data did not completely foreclose facial attacks on restrictive covenants," the restrictive covenant was valid on the merits at the motion to dismiss phase. 415 F. Supp. 3d at 717; see ECF No. 26 at 6. That case's finding about enforceability at this procedural posture, however, does

not compel the court to make the same finding here. See, e.g., S. Tr. Mortg., LLC v. Carson, No. 2:22cv245, 2023 WL 3922623, at *5 (E.D. Va. May 18, 2023) (Allen, J.) (denying a motion to dismiss a breach of contract claim as premature under Assurance Data without reaching the merits because the motion argued a restrictive covenant was overbroad); Neustar, Inc. v. Rapp, No. 1:18cv478, 2019 WL 11232181, at *1-2 (E.D. Va. Mar. 25, 2019) (Ellis, J.) (same).

CPG cites two other cases to support its position. Neither case persuades the court that considering the merits of the enforceability issue is appropriate at this juncture. First, CPG relies on Darton Environmental, Inc. v. FJUVO Collections, LLC, in which a court in the Western District of Virginia found a non-compete agreement was overbroad and unenforceable on a motion to dismiss. 332 F. Supp. 3d 1022, 1028-30 (W.D. Va. 2018); see ECF No. 26 at 4. Notably, Darton does not cite or discuss Assurance Data. By contrast, a different case from the same judicial district concluded that "Assurance Data forecloses facial attacks on restrictive covenants" in a motion to dismiss a breach of contract claim. O'Sullivan Films v. Neaves, No. 5:17-CV-00031, 2017 WL 4798997, at *8 (W.D. Va. Oct. 24, 2017). Darton, by seemingly overlooking Assurance Data, has less persuasive weight.

10

CPG's second case is <u>Reading & Language Learning Center v.</u> <u>Sturgill</u>, 94 Va. Cir. 94 (Fairfax County 2016); <u>see</u> ECF No. 26 at 4-5. There, the trial court distinguished <u>Assurance Data</u> by finding that the case before it was "<u>one of the few cases</u> in which the enforceability of a restrictive covenant could be resolved on demurrer" because the complaint specified the plaintiff's justification for the restrictive covenant. 94 Va. Cir. at *9 (emphasis added). But here, the Complaint does not proffer a justification for the restrictive covenant. The Complaint states only that the covenant was "critical to the arrangement" between the two parties, not why Eagle's business interests justified it. ECF No. 1 at ¶ 2. As a result, dismissing Plaintiffs' breach of contract claim would be premature at this time.[7]

---

[7] In their brief, Plaintiffs argue that the Complaint alleges that CPG violated two restrictive covenants other than the covenant concerning imports and exports. ECF No. 24 at 4-5. These other covenants restricted CPG and Eagle from soliciting or interfering with each other's existing or prospective customers, business relationships, and contracts. ECF Nos. 1-1 at § 7(b)(ii)(B)-(C), 1-2 at ¶ 4.8.2-.3. In response, CPG counters that the Complaint does not state that CPG agreed to refrain from interfering with Eagle's customers and contracts, in contrast to the Complaint's many references to the import-export restrictive covenant. ECF No. 26 at 2-3.

Although the Complaint does allege that CPG solicited and interfered with three of Eagle's customers, ST Tissue LLC, MLM India Limited, and Georgia-Pacific LLC, the Complaint does not link this conduct to the two restrictive covenants that prohibit it. ECF No. 1 at ¶ 22(a), (b), (e). Therefore, the Complaint does not "give the defendant fair notice of what the claim[s]"

To summarize, CPG's Rule 12(b)(6) motion argues that the import-export restrictive covenant is overbroad and unenforceable. ECF No. 17 at 3. As Assurance Data counsels, CPG's argument is premature. Therefore, the court will not decide at this juncture whether the restrictive covenant is enforceable, as further factual developments through the discovery process are necessary.

### 2. Breach of Fiduciary Duty Against Defendant Harrow

Plaintiffs allege that Defendant Harrow breached his fiduciary duty to Plaintiff Eagle, as a member of its board of directors, when he directed Defendant CPG to compete against Eagle in the import-export paper market. ECF No. 1 at ¶¶ 33-34. Defendant Harrow raises three arguments in response: (a) that the economic loss rule bars this claim; (b) that the alleged facts do not establish a breach of fiduciary duty claim; and (c) even if the Complaint states a claim, punitive damages are not warranted. ECF Nos. 15 at 3-6, 27 at 3-5. As a preliminary matter, the parties agree that only one Plaintiff, Eagle, not Geron, brings this claim against Harrow. See ECF Nos. 23 at 5-6 & n.2, 27 at 5. Accordingly, the court **DISMISSES** this claim as

---

are regarding those two covenants, nor "the grounds upon which [they] rest[]." E.I. du Pont, 637 F.3d at 440. Accordingly, Plaintiffs did not plead breaches of those two provisions with sufficient specificity, but may seek leave to amend the Complaint to allege breaches of those two provisions. See Fed. R. Civ. P. 15(a)(2).

brought by Geron against Harrow. The claim as brought by Eagle, however, requires further analysis.

### a. Economic Loss Rule

Under Virginia's economic loss rule, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004). This rule exists because "[t]he primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations." Id. That said, a "single act" can "support causes of action both for breach of contract and for breach of a duty arising in tort" when that act breaches a "common law duty, not one existing between the parties solely by virtue of the contract." Dunn Const. Co. v. Cloney, 278 Va. 260, 266-67, 682 S.E.2d 943, 946 (2009) (internal quotation marks omitted). "Thus, where, as here, a party attempts to recover for the same act or omission under both contract and tort theories, a court must look to the source of the duty allegedly breached." Metro. Life Ins. Co. v. Gorman-Hubka, No. 1:15-cv-1200, 2016 WL 10489865, at *2 (E.D. Va. Mar. 28, 2016) (Ellis, J.).

The breach of fiduciary duty claim is premised on Defendant Harrow allegedly directing CPG to compete in the international paper market, which violated his fiduciary duty to Eagle as a member of its board. ECF No. 1 at ¶¶ 33-34. Harrow argues this duty comes solely from the parties' Agreement, not the common law, because "the allegations in the Complaint only allege the importation and exportation of non-wastepaper products in violation of the Agreement." ECF No. 27 at 3.

This argument does not persuade the court. Although Harrow's alleged conduct may violate a duty imposed by the import-export restrictive covenant, that same conduct could also violate an independent common law duty. The Complaint alleges that, as a member of Plaintiff Eagle's board of directors,[8] Harrow has "a duty to act in good faith and with due regard for Eagle's rights and interests, and in the best interest of Eagle." ECF No. 1 at ¶ 33. Virginia law confirms this common law duty of corporate directors to exercise "utmost good faith and loyalty in their dealings with, and on behalf of, the corporation." Today Homes, Inc. v. Williams, 272 Va. 462, 471,

---

[8] Of note, Harrow became a director after CPG executed the Stockholder's Agreement, ECF No. 1-1, but that Agreement did not name Mr. Harrow as a member of Eagle's board of directors. Rather, the Agreement states only that "two (2) individuals designated from time to time by CPG" shall "be elected to the Board of [Eagle]." Id. at § 1.b.ii. Moreover, Harrow is not a party to the Agreements, he merely signed the Agreements on CPG's behalf. See id. at 20; ECF No. 1-2 at 30.

634 S.E.2d 737, 743 (2006) (internal quotation marks omitted). This good faith precludes a director from "placing himself in a position where his individual interest clashes with his duty to his corporation." Id. (internal quotation marks omitted). Further, a corporate director has "a fiduciary obligation not to divert a corporate business opportunity for personal gain because the opportunity is considered the property of the corporation." Id. at 742-43. This duty thus conforms with tort law's underlying concern of protecting "persons and property from injury." Filak, 594 S.E.2d at 613 (emphasis added). For these reasons, Harrow's fiduciary duty as a director is a common law duty that does not exist solely by virtue of the parties' Agreements. Because the breach of fiduciary duty claim alleges the breach of a common-law duty, the economic loss rule does not bar it.

### b. Failure to State a Claim

Defendant Harrow next avers that the Complaint does not contain sufficient facts alleging that he breached his fiduciary duty to Plaintiff Eagle. ECF No. 27 at 3-4. "In Virginia, to establish a breach of fiduciary duty, a plaintiff must show that (1) the defendant owed a fiduciary duty, (2) the defendant breached that duty, and (3) damages resulted from the breach." Tech Sys., Inc. v. Pyles, 630 F. App'x 184, 187 (4th Cir. 2015).

As a member of Eagle's board of directors, Harrow owed a fiduciary duty to Eagle of good faith and loyalty, to not put himself in a position where his personal interests as CEO of CPG clash with Eagle's interests, and to not divert business opportunities from Eagle to CPG. See Today Homes, 634 S.E.2d at 742-43. The Complaint alleges that "Harrow breached his fiduciary duty by having CPG compete directly with Eagle in the import-export paper market, diverting business and profits from Eagle, and violating the terms of the Agreements." ECF No. 1 at ¶ 34. For example, CPG allegedly bought paper from ST Tissue LLC, and Georgia-Pacific LLC, two companies from which Eagle had previously purchased paper, and then exported that paper to Mexico. Id. at ¶ 22(a), (e). The Complaint also alleges CPG exported paper to one of Eagle's customers in India, MLM India Limited, id. at ¶ 22(b), and now openly competes with Eagle by exporting paper to the international market at Harrow's direction, id. at ¶¶ 22-23. In another instance, Harrow and CPG allegedly offered to sell one thousand (1,000) pounds of paper to Eagle but exported most of the paper to China instead. Id. at ¶¶ 24-25. Finally, regarding damages, the Complaint alleges that "[o]n information and belief, CPG has diverted no less than $4 million from Eagle." Id. at ¶ 26. Considering these detailed allegations, the court will not dismiss the breach of fiduciary duty claim for failure to state a claim.

### c. Punitive Damages

Defendant Harrow also urges that "Plaintiffs fail to plausibly allege facts to support any inference that punitive damages are warranted here." ECF No. 15 at 5; see ECF No. 27 at 5. Punitive damages are appropriate for a breach of fiduciary duty claim when the alleged acts "are done with malice or wantonness." Simbeck, Inc. v. Dodd Sisk Whitlock Corp, 257 Va. 53, 58, 508 S.E.2d 601, 604 (1999); see Banks v. Mario Indus. of Va., Inc., 274 Va. 438, 460, 650 S.E.2d 687, 699 (2007). In Banks, a jury could find the requisite malice where a company's former employee, while still employed by that company and owing it a fiduciary duty, formed a new company that he intended to compete with his then-employer. 650 S.E.2d at 695, 699. By contrast, in Simbeck, the trial court did not err in setting aside a punitive damages verdict where the defendant, an insurance broker, "violated unwritten trade customs or ethical practices" in the insurance industry. 508 S.E.2d at 604. The insurance broker merely engaged in "an act of commercial 'hardball'" by requiring the plaintiff to pay off a debt to the broker before he would renew the plaintiff's coverage. Id. at 605.

Here, the Complaint alleges that Harrow, like the defendant in Banks, directed CPG to compete with Eagle in the import-export paper market despite his fiduciary duty to Eagle. ECF No. 1 at ¶ 34. The Complaint's specific allegations of

17

competition suggest behavior that is more culpable than Simbeck's "commercial hardball." 508 S.E.2d at 605. For example, per the Complaint, CPG bought paper from ST Tissue, one of Eagle's business partners, and exported that paper to Mexico. ECF No. 1 at ¶ 22(a). When "Eagle attempted to intercede," Harrow "warned Mr. Geron to 'back down' and explained, 'Things have now changed.'" Id. The Complaint also alleges that Harrow hired someone to help CPG export paper to Italy and develop paper-exporting networks in other countries. Id. at ¶ 22(c). Relevant to Harrow's intent, the Complaint alleges that he owns half of Eagle and is a member of its board of directors, id. at ¶¶ 10, 35, which Eagle argues indicates Harrow's awareness of how "his activities are placing a tremendous economic strain on Eagle," ECF No. 23 at 6. These detailed allegations suffice to state a claim for punitive damages for breach of fiduciary duty.

### 3. Unjust Enrichment Against Both Defendants

Plaintiffs allege that Defendants Harrow and CPG unjustly enriched themselves by participating in the import-export paper market despite their obligation not to. ECF No. 1 at ¶¶ 40-42. Defendants raise two issues in response: (a) whether Plaintiffs can plead a claim of unjust enrichment despite also claiming breach of contract, and (b) if yes, whether the Complaint

adequately states a claim for unjust enrichment. ECF Nos. 15 at 6-7, 17 at 5-6, 26 at 7-8, 27 at 5-6.

### a. Whether Plaintiffs Can Plead Both Unjust Enrichment and Breach of Contract

Under Virginia law, a plaintiff cannot recover on claims of both breach of contract and unjust enrichment if both claims "cover[] the same subject matter." CGI Fed. Inc. v. FCi Fed., Inc., 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018). However, this "prohibition on dual recovery does not preclude a plaintiff from pleading equitable theories of relief as alternatives to contract recovery." Colonna's Shipyard, Inc. v. Coastal Cement Corp., No. 2:22cv395, 2023 WL 3321734, at *3 (E.D. Va. May 9, 2023) (Davis, J.) (citing Fed. R. Civ. P. 8(d)). Thus, a plaintiff may plead alternative claims for breach of contract and unjust enrichment "when the applicability or enforceability of the contract is in dispute." McPike v. Zero-Gravity Holdings, Inc., 280 F. Supp. 3d 800, 810 (E.D. Va. 2017) (Ellis, J.); see Com. & Indus. Ins. Co. v. Advance Tech., Inc., No. 4:09cv27, 2009 WL 10688418, at *1 (E.D. Va. Oct. 7, 2009) (Davis, J.) (dismissal of unjust enrichment claim was premature because "[a]t oral argument, counsel for Defendant indicated that there was a question as to whether the contract covered Plaintiffs' claims"). By contrast, if the parties do not dispute the contract's enforceability or scope, then a breach of contract

19

claim precludes a claim for unjust enrichment and the latter must be dismissed. See Colonna's Shipyard, 2023 WL 3321734, at *3; McPike, 280 F. Supp. 3d at 810.

Here, Defendant CPG argues that the restrictive covenant about imports and exports is overly broad and unenforceable. ECF No. 17 at 3. That restrictive covenant covers the same subject matter as the unjust enrichment claim, i.e., Defendants "compet[ing] with Eagle in the import-export paper market". ECF No. 1 at ¶ 41. Therefore, Defendants' argument for dismissing the unjust enrichment claim is premature. Defendants argue that CPG can both challenge the restrictive covenant and seek dismissal of the unjust enrichment claim because CPG "is not attempting to invalidate the contract as a whole." ECF Nos. 26 at 8, 27 at 6. This argument, however, overlooks that the relevant inquiry is whether the contract "cover[s] the same subject matter" as the unjust enrichment claim. CGI Fed. Inc., 814 S.E.2d at 190 (emphasis added). Accordingly, the court's analysis focuses on the restrictive covenant in the contract that covers Defendants' participation in the import-export paper market.

Defendants' argument also overlooks that, at this stage of litigation, a party may plead inconsistent claims of unjust enrichment and breach of contract. See Fifth Third Bank, Nat'l Ass'n v. Metro Bus. Sys., LLC., No. 1:21-cv-832, 2021 WL

9145018, at *3 (E.D. Va. Nov. 1, 2021) (Ellis, J.) (declining to dismiss an unjust enrichment claim because it was pled in the alternative to a breach of contract claim). The court will construe Plaintiffs' unjust enrichment claim as pleaded in the alternative to the breach of contract claim. See AFC Franchising, LLC v. Fairfax Fam. Prac., Inc, No. 1:18-cv-01356, 2019 WL 8112893, at *3 (E.D. Va. Jan. 24, 2019) (Brinkema, J.) (treating unjust enrichment claim as pleaded in the alternative to contract claims).

In sum, CPG challenges the validity of the covenant about the import-export paper market. Therefore, Plaintiffs' breach of contract claim does not preclude the unjust enrichment claim about Defendants participating in the import-export paper market. The unjust enrichment claim will survive at this time.[9]

### b. Failure to State a Claim

An unjust enrichment claim arises when "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." James G. Davis Constr. Corp. v. FTJ, Inc., 298 Va. 582, 597, 841 S.E.2d 642, 650 (2020).

---

[9] Plaintiffs recognize that "there is no need for an unjust enrichment claim" if the restrictive covenant is enforceable. ECF No. 24 at 16. This issue will be ripe for resolution only after a ruling on the covenant's enforceability.

Here, Plaintiffs conferred the following benefits on Defendants CPG and Harrow: CPG obtained half of the shares of the Eagle Companies; CPG obtained a seat on Eagle's board of directors that Defendant Harrow filled; and CPG secured a $1.2 million standby letter of credit to serve as collateral for Eagle's $4.9 million line of credit. ECF No. 1 at ¶ 19. Defendants, in turn, paid $400,000 to Plaintiffs and agreed that CPG would not import or export paper. Id. Next, CPG and Harrow benefitted from this arrangement by accessing the import-export paper business, and a revenue stream from it, through its part-ownership of Eagle. Id. at ¶¶ 4, 39. Yet, CPG and Harrow did not fully "pay for" this benefit's value because CPG, at Harrow's direction, eventually began participating in the import-export paper market without Eagle. Id. at ¶¶ 5, 22-25, 41. Therefore, the Complaint states a claim of unjust enrichment against Defendants CPG and Harrow.

Defendant CPG argues that it was not unjustly enriched because it paid $400,000 for the shares of the Eagle Companies and received what it paid for. ECF No. 26 at 7. Similarly, Defendant Harrow argues that the Complaint fails to allege he received unjust gains because it alleges only that he received a seat on Eagle's board. ECF No. 15 at 7. These arguments ignore that the parties' exchange of benefits involved more than $400,000 and a seat on Eagle's board. According to the

22

Complaint, "[c]ritical to the arrangement was CPG's agreement that, upon acquiring half of Eagle, CPG would not import or export paper other than wastepaper." ECF No. 1 at ¶ 2. Because Defendants benefitted from the arrangement with Plaintiffs but did not stay out of the import-export market, the Complaint states a claim for unjust enrichment.

### IV. Motion to Strike Plaintiffs' Jury Demand

Defendants co-filed a Motion to Strike Plaintiffs' demand for a jury trial because the parties' Purchase Agreement contains a jury waiver clause. ECF Nos. 18 (Motion), 19 at 1 (Memorandum in Support). Notably the waiver does not name Plaintiff Geron,[10] but he signed the Purchase Agreement in which the waiver appears. ECF No. 1-2 at 2, ¶ 18. Plaintiffs seize on that omission to argue that Geron did not waive his right to trial by jury. ECF No. 22 at 1-2.[11] Defendants respond that the waiver should be broadly construed to cover Geron's claims, which are identical to Plaintiff Eagle's claims. ECF No. 25 at 2-3.

---

[10] The jury waiver clause reads as follows: "BUYER [CPG], THE COMPANY [Eagle], AND THE DISC [one of the other "Eagle Companies"] HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY." ECF No. 1-2 at ¶ 18. Per the Purchase Agreement, a "DISC" is "a Domestic International Sales Corporation under Section 992(b) of the Internal Revenue Code of 1986." Id. at 1.

[11] Plaintiffs do not contest that the waiver applies to Eagle and its claims. ECF No. 22 at 1.

The Seventh Amendment guarantees the right to a jury trial in civil suits at common law. U.S. Const. amend. VII. However, that right may be waived by contract. See Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832 (4th Cir. 1986).[12] In this jurisdiction, courts broadly construe these waivers "to encompass both contract claims and related tort claims where the causes of action would not exist were it not for the relationship between [the parties], as well as counterclaims whether or not arising from the contract at issue." Fluor Enters., Inc. v. Mitsubishi Hitachi Power Sys. Ams., Inc., No. 3:17cv622, 2019 WL 1620755, at *5 (E.D. Va. Apr. 16, 2019) (Lauck, J.) (quoting Zaklit v. Glob. Linguist Sols., LLC, 53 F. Supp. 3d 835, 857 (E.D. Va. 2014) (Cacheris, J.)). Similarly, the court has applied a contract's forum selection clause to a plaintiff that did not sign the contract when the plaintiff relied on the contract containing the clause to make a breach of contract claim. See Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., 131 F. Supp. 2d 787, 791-92 (E.D. Va. 2000) (Smith, J.).

---

[12] Plaintiffs do not dispute that consent to the waiver was both voluntary and informed. See ECF No. 22; Leasing Serv. Corp., 804 F.2d at 833 ("[T]he party seeking enforcement of the waiver must prove that consent was both voluntary and informed.").

Here, even though the jury waiver did not name Geron, it covers his claims. Plaintiffs Geron and Eagle jointly pled the same claims in one Complaint and defend these claims together in the same briefs using the same arguments. See ECF Nos. 1, 23, 24. Further, none of Geron's causes of action would exist without the relationship between Eagle and CPG. Additionally, Geron relies on the Purchase Agreement, which contains the waiver and to which Geron was a party, to support his breach of contract and unjust enrichment claims. ECF Nos. 1 at 10-11, 1-2 at 2. As a party to that Agreement, he consented to the waiver's application to Eagle and its claims. For these reasons, the court finds that the jury waiver also covers Geron's claims against Defendants. The court therefore grants Defendants' Motion to Strike.

### V. Conclusion

For the reasons stated above, the court's ruling on the instant motions is as follows. The court **GRANTS** in part Defendant Harrow's Motion to Dismiss, ECF No. 14, as to his request to dismiss Plaintiff Geron's breach of fiduciary duty claim against him. Therefore, the court **DISMISSES** the breach of fiduciary duty claim (Count II) as brought by Plaintiff Geron against Defendant Harrow. On all other grounds, Harrow's Motion to Dismiss, ECF No. 14 is **DENIED**. The court also **DENIES** Defendant CPG's Motion to Dismiss, ECF No. 16. Finally, the

court **GRANTS** Defendants' Motion to Strike. ECF No. 18. Accordingly, Plaintiffs' jury demand is **STRICKEN**.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

March 27 , 2024